## Grant Keime, Appellant, v. Frank Thum and Henry Thum, Appellees.

## Gen. No. 7,863.

1. PLEADING—*no implied promise to pay in pleading.* In pleading there is no such thing as an implied promise to pay, but all promises are averred to be express and are so treated in passing on demurrer.

2. PLEADING—*verified statement of claim must state whether promise implied or express.* The rule that in pleading there is no such thing as an implied promise to pay, and all promises are averred to be express, does not apply to a verified statement of plaintiff's claim which must state all the facts necessary to support the action.

3. PLEADING—*no recovery under implied promise where verified claim alleges express promise.* There can be no recovery on an implied promise to pay where verified statement of claim alleges an express promise to pay.

4. SALES—*price may be fixed as upon happening of subsequent event.* It was competent for parties in making sale of corn to agree upon the manner in which the price should be determined, and that might be the market price at a future time and place or upon the happening of a subsequent event, under Uniform Sales Act, sec. 9, Cahill's St., ch. 121a, ¶ 12.

5. SALES—*implied agreement by seller concerning price.* Where corn was sold and delivered under an agreement that the price should be that received by seller for the remainder of his corn, there was an implied agreement on the part of the seller to sell the remainder of his corn.

6. CONTRACTS—*implied promise to perform act.* In any case where from its nature a contract requires some action by one party or the other or the co-operation of both, there is an implied promise to perform the act or give the co-operation, though the promise is not expressed.

7. SALES—*price of corn under agreement.* Where corn was sold and delivered under agreement that price was to be that received by seller for the remainder of his corn, but seller failed to sell the remainder of his corn and fed it to hogs, the amount that seller was entitled to recover from purchaser was not the market value of the corn at the time of the sale but such value at the time he fed it to the hogs.

8. SALES—*contract as to price construed.* Where corn was sold and delivered under agreement that price was to be that received by seller for the remainder of his corn, but seller fed the corn to his hogs, the measure of recovery for the corn was not the amount netted seller by feeding it instead of selling it.

9. INSTRUCTIONS—*object of instructions.* The object of instructions is to aid the jury, uninformed as juries are, as to the method of looking at evidence and in ascertaining and applying the law to the facts in controversy.

10. SALES—*determination of price by sale of balance remaining.* Where corn was sold under agreement that price should be that received by seller for remainder of his corn, the price was to be determined by a sale of all of the remainder of the corn and not "a reasonable amount" thereof.

11. TENDER AND DEPOSIT IN COURT—*defect immaterial where plaintiff would not accept.* That there was a defect in verbiage of defendants while making tender was immaterial if it is clear that plaintiff would not accept it in any event.

Appeal by plaintiff from the Circuit Court of Fulton county; the Hon. GEORGE C. HILLYER, Judge, presiding. Heard in this court at the April term, 1925. Affirmed. Opinion filed October 27, 1925. Rehearing denied December 16, 1925.

BURNETT M. CHIPERFIELD, CLAUDE E. CHIPERFIELD and ROBERT B. CHIPERFIELD, for appellant.

GLENN RATCLIFF, for appellees.

MR. JUSTICE CROW delivered the opinion of the court.
Appellant sold to appellees a quantity of unshelled corn in the month of August, 1920. Afterward, in 1922, a dispute arose as to the price of it. Thereupon appellant brought suit against appellees, filing the common counts. With the declaration an affidavit of plaintiff's claim was filed. It stated that the demand of the plaintiff in said cause "is for 1,554-2/7 bushels

of corn sold and delivered by the plaintiff to the defendants at a price of $1.80 per bushel, which the defendants agreed to pay the plaintiff, and that there is due to the plaintiff from the defendants the said sum of $2,797.70, after allowing them all just credits, deductions and set-offs.''

To the declaration defendants pleaded that as to all sums of money due in excess of the sum of $1,158 they did not promise in manner and form as the plaintiff in his declaration and in each count had complained of them, and that as to the sum of $1,158 parcel of the sums demanded, they pleaded a tender and refusal to accept it, stating facts keeping the tender good. To the plea plaintiff filed a replication traversing the tender.

With the plea defendants filed an affidavit of merits of their defense, and afterward filed an amended affidavit of merits. In the amended affidavit they say they ''have a good defense to said suit upon the merits to the whole of the plaintiff's demand, and that the nature of the defense is that as to the sum of $1,158 of the plaintiff's demand these defendants have tendered said sum to the plaintiff prior to the commencement of this suit, and have brought said sum of money into court for said plaintiff where he can receive the same, and that as to the balance of the claim of the said plaintiff's demand other than the said sum of $1,158 defendants do not owe the same or any part thereof to the plaintiff, for the reason that the defendants never bought the corn set forth and mentioned in plaintiff's affidavit or any part thereof for $1.80 per bushel, and never agreed to pay to the plaintiff that amount therefor; that these defendants were to pay the plaintiff for the corn purchased by them from him and being the same corn sued for in this suit at the same rate per bushel that the said plaintiff should receive on the market when he sold the balance of the corn that he then had on hand; that the said plaintiff did not sell said corn on the market but fed said

corn to his live stock during the summer of 1922, and that at the time said plaintiff so disposed of said corn the market price of the same was less than the sum of 60 cents per bushel, and less than the amount already tendered to the plaintiff; that because of the failure of the plaintiff to sell said corn so as to fix the price to be paid by these defendants for the corn purchased by them the plaintiff has lost his right to receive anything more for said corn so purchased by the defendants than the fair market price of said corn at the time he disposed of the remainder of his said corn; and that the defendants did not nor either of them ever become or are now indebted to the plaintiff for any corn purchased of the plaintiff in any sum in excess of the amount already tendered him.''

Upon the issues formed by the pleadings, restricted by the affidavits of plaintiff's claim and of the merits of defendants' defense, the cause was tried before a jury which found the issues for the defendants and that the tender was sufficient. The motion for a new trial was overruled and judgment rendered against plaintiff for costs and this appeal followed.

Thirteen errors are assigned as grounds for reversal of the judgment. It will simplify the disposition of the case to advert more particularly to the state and legal effect of the pleadings. By them the parties have placed upon the record the statement of facts that must determine the controversy. The consolidated common counts were filed, stating in nine different, general and indefinite forms the demand of the plaintiff. But the affidavit of plaintiff's claim eliminated all counts except that for ''goods, chattels and effects before that time sold and delivered by plaintiff to defendants at their request.'' That count was by the affidavit rendered certain and definite in all the terms authorizing a recovery. By it the quantity of corn sold and delivered, the price per bushel, and the express agreement of defendants to pay the price, were explicitly stated, and the amount

due under those terms. Under the elementary principles of procedure he could recover only upon proof of those terms by a preponderance of the evidence if challenged, as they were, by an appropriate plea supported by an affidavit of merits of the defense stated in the plea. *Reddig v. Looney*, 208 Ill. App. 413. Upon this state of the record the parties went to the jury.

Under the count for goods and chattels sold and delivered, the averment that the defendants being so indebted in consideration thereof then and there promised to pay the plaintiff the sum of money due is in form the averment of an express promise. This is a matter of pleading only. In the absence of an affidavit of plaintiff's claim, delivery of corn, though no price had been fixed, could be shown by evidence of a delivery under such circumstances as that the law imputes a promise to pay what it is reasonably worth at the time of such delivery. In pleading there is no such thing as an implied promise to pay. All promises are averred to be express and are so treated in passing on demurrer. 1 Chitty, Pleading, p. 302; Gould's Pleading, ch. 3, sec. 19. But that rule does not apply to a verified statement of plaintiff's claim under the statute. The verification must state all the facts necessary to support the action. If it does not, it will on motion be stricken from the files, not being subject to demurrer. If the preponderance of the evidence produced at the trial does not sustain the case upon all the facts stated in the affidavit, the plaintiff must fail. The verified statement of defense is attended by the same consequences.

The testimony on behalf of plaintiff does not support his sworn statement that the agreed price was $1.80 per bushel. Plaintiff does not testify defendants were to pay that price. His testimony corroborates the affidavit of merits of defendants' defense as to the method of ascertaining the price of the corn sold to them. All the evidence as it is found in the tran-

script not only fails to establish an agreed price, but establishes the fact that there was not an agreed price at the time the corn was sold. On the other hand, it shows that they agreed upon the method of ascertaining the price to be fixed in the future, as stated in the affidavit of merits of the defense.

It was competent for the parties, in making the sale of corn to agree upon the manner in which the price should be determined. That might be the market price at a future time and place or upon the happening of a subsequent event (35 Cyc., p. 48, note 19; 35 Cyc., p. 103, note 80; 35 Cyc., p. 104; Uniform Sales Act, sec. 9, Cahill's St. ch. 121a, ¶ 12). The defense was that the price to be paid was that which should obtain on the sale by plaintiff of the remainder of the corn after defendants got their corn. This was a contingency controlled by the plaintiff. It was never out of his power to control it. If he saw fit to refuse to comply, he should not in equity and good conscience be heard to insist some other method more advantageous to him should be substituted.

With regard to the plaintiff's contract that the price should be that received by him for the remainder of his corn, there was an implied agreement to sell it. In any case where, from its nature, a contract requires some action by one party or the other or the co-operation of both, there is an implied promise to perform the act, or give the co-operation, though the promise is not expressed. Williston, Contracts, sec. 1293.

The evidence discloses prospective purchasers sought after the sale to defendants to buy corn from plaintiff but he declined to sell unless he could sell all he had "to establish a price." The price to be established must have been of this corn. The evidence warrants no other conclusion. The evidence then shows he bought hogs and fed the remainder of the corn to them. The price of corn was then declining. Shortly after he had fed them and sold them he demanded

$1.77 per bushel for the corn, because, as he stated, that was the amount netted him by feeding them. But that was not the contract and defendants properly refused to pay on that basis.

There being no basis for fixing the price by the agreed method on account of plaintiff's conduct, a price must be fixed upon some other basis. The contract of the parties was no longer the law of the parties because plaintiff had created a condition rendering that law inoperative. Plaintiff committed a breach of it. The price of the corn could not be fixed by the price of the remainder, for he did not sell it, and had fed it to hogs. He sought arbitrarily to substitute a device advantageous to him, for that upon which the minds of the parties met when the sale was made. Defendants have not sought to avoid payment. If no agreement had been made as to price, under the established rule the market price at the time and place of delivery would govern, for the price was then due. Appellant contends that rule must govern under the facts shown by this record. Appellees contend that, the price by agreement having been fixed by a sale of the remainder of the corn to be made in the future, the fair market price at that time must control.

We think the contention of appellees is right and ought to be sustained. Why should plaintiff be allowed the market price of corn at the time it was sold and delivered when they had expressly agreed it should be fixed upon a basis of sales to be made in the future and when the seller refused to sell, and more profitably consumed the corn himself? By stipulating a future price based upon future sales plaintiff contracted away the right to demand the current market price at the time of the sale. He not only contracted away that right, but by the contract fixed a contingent price which would be due at a future time. The only contingency upon which he would be entitled to the market price at the time of the sale would be the fact no other price or terms was agreed upon. But

when they agreed, as the evidence shows, that the fair market price when in the future plaintiff should sell the remainder of his corn should be the measure of defendants' liability, and that he used it for his own purposes, every principle of morals and of law requires him to accept what then was the fair market price. He may not demand the value of the corn when converted into marketable live stock for that was not the contract of the parties and could not have been in contemplation of both at the time of the sale. It was probably not in the mind of either at that time.

Plaintiff having put it out of his power to comply with the express contract as to the time and method of ascertaining the price which defendants should pay, the principle of *quasi* contract announced in the case of *Booker v. Wolf,* 195 Ill. 365 (370) applies by analogy:

"It is also insisted that the action will not lie because there cannot be at the same time an express contract and an implied one respecting the same subject matter. It is true that the law will not imply an agreement in the presence of an express contract of the parties, and if, when the action was brought, there was a lawful, subsisting express contract of the defendants to pay the plaintiff for the property with the land and $100 in money, the law would not imply a different agreement. There was no such contract at the time. The defendants had terminated it, and it cannot be said that plaintiff was seeking to recover on an implied contract for something which had been provided for by a valid, existing, express agreement between him and defendants. Defendants cannot be permitted to set up the contract which they had repudiated, to accomplish the fraudulent purpose of preventing such a contract as the law would otherwise imply."

Much more is said in the opinion relating to principles pertinent to the present case. But the case by analogy illustrates the principle controlling the rights of one in misreliance upon the promise of a party at

fault in contracts of this character. Woodward, Quasi Contracts, sec. 10. Such party cannot speculate upon advantage of delay without bearing the full burden if the delay results in detriment to himself. The defendants in this case were willing to accept the hazard under the contract and the risk must be reciprocal. By their contract the right to a price at the time and place of delivery was denied to plaintiff. By the conduct of plaintiff the method of ascertaining the agreed future price was rendered impossible. He had agreed with defendants upon a price depending upon a future event under his control, and by which he evidently expected to profit. It is just and equitable, when his expectation failed, and he refused to establish the standard he had agreed upon, that he should receive only a price that was fair and reasonable at that time. Looked at from the defendants' situation, it is not less reasonable for their expectations are to be met in the same manner. There is mutuality of right and of obligation. As it is said in some of the cases, the plaintiff is to be put in the same position as if the contract had been performed. That being true, reciprocally the defendants are only bound to that extent.

We must carry out the contract of the parties as they were content to make it. If the vendor was willing to contract that the title to the corn should pass and that the price should be fixed afterward in the manner stipulated, there is no legal obstacle to the arrangement, thereby binding him to fix the price as they had agreed. If all the conditions have not been complied with by the plaintiff, performance of which by the terms of the contract entitled him to the price to be fixed according to the manner stipulated, if he afterward broke the contract, or did any act rendering it impossible to fix it as agreed, he cannot thereby gain any advantage over the purchaser or increase the purchaser's obligation. Gaged by the known motives influencing human conduct, it is not likely this case would

be here, at least in this condition, if the price of corn had advanced instead of declining.

It is true that by the act of the plaintiff in refusing to perform, there was no contract fixing the price. That being so, the law supplies the lack. It does not say what the price shall be, but affords relief by allowing a price *as if* there were a valid subsisting contract as to the price. *Board of Highway Com'rs v. City of Bloomington,* 253 Ill. 164 (173); *People v. Dummer,* 274 Ill. 637 (641-42). As in any like case, the price is a fair cash market price at the time it was due under the contract, and when he would be entitled to it.

Again, looking at the plaintiff's conduct in committing a breach of his contract as to the method by which the price was to be fixed, if defendants were compelled to pay the market price obtaining at the time of the sale, they ought to have an action for damages for plaintiff's breach. Conjecturally, the measure of recovery would be the difference between the price of corn at the time it was sold and what it was at the time he fed it to his hogs. The fortune of plaintiff would be no greater at the end of that litigation than at the end of this. By holding as we do, circuity of action is avoided and the principles of law governing the contractual relations of the parties are enforced.

Appellant complains of the giving of instructions on behalf of defendant. Those numbered 2, 3, 4, 6 and 7 are said to be erroneous because they do not authorize a verdict upon facts falling within the terms of the agreement relied on in the affidavit of merits, and for other reasons. We have read carefully all of the instructions given for both parties. If all that is said of the instructions on behalf of defendants be conceded to be valid objections, the same criticism may with equal force be charged against those given on behalf of plaintiff. We think some of the instructions given on behalf of both parties were of little

value as aids to the jury in reaching a verdict. The object of instructions is to aid the jury, uninformed as juries are, as to the method of looking at evidence and in ascertaining and applying the law to the facts in controversy. Several of them could be of no assistance, and at the same time were not, generally, of such character as to mislead the jury. Keeping in mind that the question presented by defendants was, whether they were to pay such a price as plaintiff should sell the remainder of his corn for after selling defendants theirs, what was the meaning of the contract? Instruction 18 given for plaintiff told the jury that, in passing on that question, such agreement "would require the plaintiff to sell on the market only a reasonable amount of the remainder of the corn which he had on hand for the fixing of the price to be paid by defendants to him for the corn sold to them and that he was not required to sell all the corn remaining on hand after the delivery of the corn sold to defendants."

It was not an interpretation of the contract but a perversion of it. If, as defendants pleaded and as the evidence shows, the contract was to pay such a price as plaintiff should sell the remainder of his corn for, it did not mean he should only sell a reasonable amount. The contract voluntarily made might in its execution disappoint his expectations and prove very unsatisfactory, but it was binding on the parties and fixed their obligations. *Walker v. Tucker*, 70 Ill. 527; *Balance v. Vanuxem*, 191 Ill. 319.

Instruction 19 ignores the case stated by plaintiff in his affidavit of merits and authorizes a verdict on grounds not stated in it. By it, the jury were told the burden of proof was upon plaintiff "to show by the preponderance of the evidence the number of bushels of corn sold by him to defendants and the price plaintiff was entitled to receive therefor, either as fixed by the terms of a contract between the plaintiff and defendants or, in the absence of a contract, the

fair cash market value of said corn at the time of delivery by plaintiff to the defendants.'' The burden was upon plaintiff to prove he sold the quantity of corn stated in his affidavit of claim and that it was sold ''at a price of $1.80 per bushel, which the defendants agreed to pay to the plaintiff.'' The instruction referred to no such case as plaintiff had stated and was required to prove. There is of course no exception, and could be none, to the giving of these instructions, under the state of the record, but if defendants' instructions were subject to the criticism directed against them, plaintiff has not sinned less in tendency to mislead the jury and in a failure to aid them. But if instruction 19 were proper in all other respects, it does not correctly advise the jury as to the time when a fair cash market value would be the proper measure of damages. That time, if the damages were to be fixed upon a market price, was the time when plaintiff refused to sell or put it out of his power to sell.

These references are made, not for the purpose of criticism, but to show that plaintiff has put in the record like errors as those charged to defendants. He abandoned completely the theory of his right to a recovery stated in his affidavit of merits. In so far as the instructions undertake to inform the jury as to measure of damages in the absence of an express contract, they state an improper measure and ought to have been refused. They conflict with those given for defendants stating the rule which we have held to be the correct rule. We think the case ought not to be reversed on account of the instructions.

It is not made to appear how, or upon what principle plaintiff could recover anything upon the record he made by averment and proofs. They did not correspond. A plaintiff cannot recover by proof of a different state of facts from that stated in his declaration as restricted by the affidavit of his claim. He stated a case based upon one theory and sought to prove

a case based upon entirely different theories, both as to substance and elements of damages. As to the tender, it was sufficient. The proof of it was complete. If there were a defect in verbiage of defendants while making the tender, but we hold there was not, it comes to nothing for it is clear plaintiff would not accept it.

The judgment of the circuit court is affirmed.

*Affirmed.*